Case 7:16-cv-02763-VB   Document 54   Filed 03/15/17   Page 1 of 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ROBIN BHATTACHARYA,                                    :
           Plaintiff,                                       :
                                                                            :
v.                                                                          :     **OPINION AND ORDER**
                                                                            :
ROCKLAND COMMUNITY COLLEGE,              :     16 CV 2763 (VB)
SUNY ROCKLAND COMMUNITY                      :
COLLEGE BOARD OF TRUSTEES,                    :
ROCKLAND COMMUNITY COLLEGE              :
ADJUNCT FACULTY ASSOCIATION,            :
LOCAL 4896, NYSUT, AFT, AFL-CIO, and     :
JERRY BORREGGINE,                                       :
           Defendants.                                   :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Robin Bhattacharya, brings this action pursuant to 42 U.S.C. § 1983 against defendants Rockland Community College and SUNY Rockland Community College Board of Trustees (collectively "RCC"); and the Rockland Community College Adjunct Faculty Association, Local 4896, NYSUT, AFT, AFL-CIO, and its president, Jerry Borreggine (collectively "the Faculty Association defendants"), alleging he was retaliated against for exercising his First Amendment Rights.  Plaintiff also brings several claims under New York state law.

      Now pending are defendants' motions to dismiss the amended complaint (Docs. ##34, 39), and plaintiff's motion for leave to file a second amended complaint, and to file a late notice of claim.  (Doc. #49).

      For the following reasons, RCC's motion is GRANTED, the Faculty Association defendants' motion is DENIED AS MOOT, and plaintiff's motion is DENIED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

In deciding the pending motion, the Court accepts as true all well-pleaded allegations of the amended complaint and draws all reasonable inferences in plaintiff's favor.

Plaintiff worked as an adjunct professor at RCC from 2009 through May 2015. In April 2015, five days before the final exam in a course plaintiff was teaching, "a group of about five students demanded that [plaintiff] provide them with all the test questions and answers in advance of the final." (Am. Compl. ¶ 48). Plaintiff told the students he would not do so "under any circumstances." (Id. ¶ 49).

Shortly thereafter, the RCC Division Chair Cathy Roche showed plaintiff an anonymous letter she received from some of plaintiff's students, in which they complained about plaintiff's teaching methods. (Am. Compl. ¶¶ 50-51).

Plaintiff alleges one or more of the students who were behind the anonymous complaint letter were the same student(s) who had requested exam questions and answers. In addition, plaintiff alleges some of these students "were flunking [the] course because of their own lack of effort as students," and that ultimately some of those students did fail the final exam. (Bhattacharya Dec'l ¶ 33).

Plaintiff explained to Roche that he believed the students who submitted the anonymous complaint letter were "undoubtedly one (or more) of" the students who had asked for the final exam questions and answers. (Am. Compl. ¶ 52).

According to plaintiff, Roche "appeared more concern[ed] that the students who wanted to cheat made a complaint, than about their efforts to cheat and their motive to make a false complaint after [plaintiff] refused to permit the cheating." (Am. Compl. ¶ 55).

Roche asked another RCC professor to investigate (the "investigating professor") the anonymous complaint letter. Plaintiff alleges Roche knew the investigating professor "wished to take over . . . some or all of [plaintiff's] classes." (Am. Compl. ¶ 69).

During a meeting with plaintiff on May 14, 2015, the investigating professor allegedly told plaintiff "that his standards were 'too high,' noting that [plaintiff] had taught or was [also] teaching at colleges with higher academic standards than RCC." (Am. Compl. ¶ 70).

Plaintiff alleges the investigating professor "did not inquire about the students who sought to cheat, nor did he have any response to [plaintiff]'s statement . . . that the student or students who were likely complaining 'were barely passing the class'" because of lack of effort on their part. (Am. Compl. ¶ 73).

Plaintiff concluded the investigating professor was "condoning academic dishonesty." (Am. Compl. ¶ 74). He alleges the investigation was "a baseless hatchet job designed to cause [plaintiff's] elimination from RCC for refusing to engage in academic dishonesty and refusing to allow cheating on the final examination." (Id.).

By letter dated August 27, 2015, RCC informed plaintiff his adjunct teaching contract would "not be continued beyond the Summer, 2015 term." (Dranoff Dec'l Ex. E).[1]

Other than the anonymous complaint letter at issue, during his period of employment with RCC, plaintiff had "no negative reviews from the students or from the faculty." (Am. Compl. ¶ 16). Moreover, after plaintiff told his students about the anonymous complaint letter,

---

[1] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

he received "several unsolicited emails" from students voicing support for him and saying they did not agree with the complaint letter. (Am. Compl. ¶ 60).[2]

## DISCUSSION

I. <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. <u>Id</u>. at 678. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id</u>. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." <u>Id</u>. at 678. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>.

II. <u>First Amendment Retaliation</u>

Plaintiff's only federal claim is his "First Amendment claim to free speech . . . as part of academic freedom."[3] (Am. Compl. at 1). This claim is asserted against RCC only.

---

[2] Plaintiff makes additional allegations related to his grievance process that relate only to his state law claims. As explained below, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, so it need not summarize those allegations here.

[3] Plaintiff originally asserted a claim of violation of his right to freedom of association, but withdrew that claim in his opposition brief. (Pl.'s Opp. at 1, n.3).

4

RCC argues plaintiff's First Amendment claim must be dismissed because he has failed plausibly to allege he engaged in protected conduct.

The Court agrees.

The Court will address each of plaintiff's theories of First Amendment violation—free speech and academic freedom—in turn.

A.   Free Speech Claim

"To state a First Amendment retaliation claim, a plaintiff must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech. Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011) (citing Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) and Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010)).

With respect to the first element, "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142 (1983).  The Supreme Court "has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006).

The Court must therefore determine "whether the employee spoke as a citizen on a matter of public concern." Garcetti v. Ceballos, 547 U.S. at 418 (citing Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty., 391 U.S. 563, 568 (1968).  "If the answer is no, the

5

employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Id. (citing Connick v. Myers, 461 U.S. at 147).

### 1. Speech as a Citizen

Public employees speak as employees, and not as citizens, when they "make statements pursuant to their official duties." Garcetti v. Ceballos, 547 U.S. at 421.[4]  "The objective inquiry into whether a public employee spoke 'pursuant to' . . . her official duties is 'a practical one.'" Weintraub v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y., 593 F.3d 196, 202 (2d Cir. 2010) (quoting Garcetti v. Ceballos, 547 U.S. at 424).  Speech may be deemed "pursuant to" a public employee's official duties if it is "'part-and-parcel of his concerns' about his ability to 'properly execute his duties.'" Id. at 203 (quoting Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 694 (5th Cir. 2007)).

Here, plaintiff alleges "[o]ne of [his] duties . . . was the fair evaluation of students' learning in the classes he taught, with grades issued pursuant to RCC's Academic Grading System." (Am. Compl. ¶ 24).  He further alleges that it was his "professional obligation as a teacher" to "express to the . . . public (via the student's academic transcript) that the student did not adequately learn the course material, by issuing a grade of 'F'." (Am. Compl. ¶ 30).  The Court rejects plaintiff's allegation that it was also his "personal obligation as a citizen" to do this,

---

[4] The Court in Garcetti v. Ceballos did not decide whether its ruling in this regard "would apply in the same manner to a case involving speech related to scholarship or teaching." 547 U.S. at 425.  Moreover, there is still "an open question in this Circuit whether Garcetti applies to classroom instruction." Pense v. Eastwood, 303 Fed. App'x 933, 934 (2d Cir. 2008) (summary order).  However, these questions are immaterial here because the decision not to give students exam answers before an exam does not relate to scholarship, teaching, or classroom instruction—it is basic common sense.  But even if it did, as explained below, there is no doubt that even a teacher's speech must be on a matter of public concern to be protected by the First Amendment.  Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois, 391 U.S. 563, 574 (1968).  This case does not involve a question of public concern, which by itself is fatal to plaintiff's claim.

and his suggestion that a student's academic transcript is a matter of public concern.  (Id.).  It is, of course, fundamental to the role of a teacher to refuse to permit cheating on an examination.  But plaintiff's decision to do so here was part of his duties of employment, not his "obligation as a citizen."  Likewise, plaintiff's complaints about the ensuing investigation were part-and-parcel of his concerns as an adjunct professor at RCC, not his concerns as a citizen.

The Court therefore concludes plaintiff was speaking as an employee, not a citizen.

### 2. Matter of Public Concern

"[A] teacher's exercise of his right to speak on issues of public [concern] may not furnish the basis for his dismissal from public employment."  Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois, 391 U.S. 563, 574 (1968).

Public concern "is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication . . . [it also includes] certain private remarks, such as negative comments about the President of the United States."  City of San Diego, Cal. v. Roe, 543 U.S. 77, 83–84 (2004).

Here, plaintiff offers numerous grandiose public interest concerns that are tangentially related to the facts of the case.  For instance, plaintiff makes the following assertions:

- The anonymous complaint letter "amount[ed] to a desperate attempt on the part of one or more" students who were failing his class "to extort [plaintiff] into allowing them to pass the course that the[y] . . . would otherwise flunk," which he argues is a matter of public concern.  (Pl.'s Opp. at 3).

- "[A] professor must have the right to express his own views—his or her professional judgment—as to evaluating a student's performance[, which] . . . at a public institution such as RCC, . . . is a matter of public concern, [because] the public expects its taxpayer-funded institution will award diplomas based on satisfactory completion of the academic program."  (Pl.'s Opp. at 4).

- His "private discussions with his supervisor . . . and with [the] RCC President . . . related to a matter of public concern, namely, one or more students['] efforts to cheat on his Finance examination, and to extort or blackmail either [plaintiff] or the college into allowing the flunking students to pass."  (Pl.'s Opp. at 9).

- Plaintiff's "conduct and expressive views that he would uphold academic integrity runs to the heart of the integrity of RCC as an institution of higher learning," which "is unquestionably a matter of public concern."  (Pl.'s Opp. at 9).

- "Fair and accurate examination of public college students is most certainly a 'matter of public concern,'" because "the public certainly desires academic integrity in its taxpayer-funded public colleges."  (Pl.'s Opp. at 10).

Despite these sweeping claims, ultimately, the facts alleged in the amended complaint boil down to this: plaintiff refused to provide exam answers to certain students ahead of time, reported the students' attempt at cheating to RCC (after RCC received an anonymous complaint letter about plaintiff), issued some of those students a failing grade, and complained to the administration about the investigation into the matter.  These simply are not matters of public concern.  As the Supreme Court observed in Garcetti v. Ceballos, "[o]ur precedents do not support the existence of a constitutional cause of action behind every statement a public employee makes in the course of doing his or her job."  547 U.S. at 426.

Accordingly, plaintiff has failed plausibly to allege a violation of his right to free speech under the First Amendment.

      B.      Academic Freedom Claim

Plaintiff's claim of infringement upon his First Amendment right to academic freedom is similarly unavailing.

"The First Amendment guarantee of academic freedom rests on a recognition of 'the vital role in a democracy that is played by those who guide and train our youth.'"  Burt v. Gates, 502 F.3d 183, 190 (2d Cir. 2007) (quoting Sweezy v. New Hampshire, 354 U.S. 234, 250 (1957)).  "Thus, academic freedom can be implicated in a teacher's refusal to answer questions about the content of his lectures, . . . in a teacher's refusal to certify that he is not a member of an organization considered subversive, . . . in a university's selection of a diverse student body, . . . and in the University's right to make its own rules concerning academic standards and

8

discharges." Id. at 191(internal citations omitted).  In other words, academic freedom relates to the "substance of academic expression," Weintraub v. Bd. of Educ. of City of N.Y., 489 F. Supp. 2d 209, 221 n.12 (E.D.N.Y. 2007), aff'd sub nom. Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 593 F.3d 196 (2d Cir. 2010), or the "'marketplace of ideas' in the university[,] and prevents government intrusion that would otherwise 'cast a pall of orthodoxy over the classroom.'"  Burt v. Gates, 502 F.3d at 190–91(quoting Keyishian v. Bd. of Regents of Univ. of State of N. Y., 385 U.S. 589, 603 (1967)).

Here, plaintiff's allegations relate merely to a decision not to give exam answers to students and his conversations with his employer regarding an anonymous complaint letter and subsequent investigation.  Even framed as plaintiff would like—"[a]llowing [him] to be punished for refusing to engage in academic dishonesty will chill what is most fundamental to academia, namely, academic integrity" (Am. Compl. ¶ 105)—this claim falls short as a matter of law.  Simply put, plaintiff's actions as alleged here do not involve the substance of plaintiff's academic expression or ideas.

Plaintiff has thus failed plausibly to allege a violation of his right to academic freedom. Accordingly, plaintiff's First Amendment retaliation claim is dismissed.[5]

III.    Supplemental Jurisdiction

Because the Court is dismissing the only federal claim in this case, there are no longer any claims remaining over which it has original jurisdiction.

---

[5]    Plaintiff also alleges he is "originally from India (ethnically Indian and with dark skin)" (Am. Compl. ¶ 12), and asserts in several places that various decision makers were "U.S.-born non-Indian and Caucasian" (see, e.g., ¶¶ 79, 91).  However, the amended complaint explicitly states that it "eliminates all federal claims except Plaintiff's First Amendment claim to free speech and association as a part of academic freedom," and that "[p]laintiff's claims for unlawful discrimination and arbitrary and capricious action are being pursued only under New York law as supplemental claims."  (Am. Compl. at 1).

"A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009); 28 U.S.C. § 1367(c)(3).

The Court declines to exercise supplemental jurisdiction over the remaining state law claims here.

Accordingly, the Court need not address the arguments in RCC's motion relating to plaintiff's state law claims because they are moot. Moreover, the Court need not address the arguments made in the Faculty Association defendants' motion to dismiss because they address the merits of the state law claims only.

IV.     Plaintiff's Motion for Leave to Amend and File Late Notice of Claim

Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires."

However, leave to amend may "properly be denied for . . . futility of amendment." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Here, plaintiff has already been given an opportunity to amend. In particular, on June 15, 2016, defendants moved to dismiss plaintiff's original complaint for failure to state a claim. (Docs. ##15, 22). Thereafter, the Court sua sponte granted plaintiff leave to file an amended complaint. (Doc. #25). Plaintiff elected to file an amended complaint and did so on July 10, 2016. (Docs. ##26, 30). Defendants then moved to dismiss the amended complaint. (Docs. ##34, 39). Therefore, the Court has already given plaintiff two opportunities to show he has a valid claim, and justice does not require that he be given a third.

Moreover, amendment would be futile because plaintiff's proposed second amended complaint (Doc. #50-1) does not add to or alter the federal claim asserted in the amended complaint.[6]  As explained above, the Court concludes plaintiff's only federal claim must be dismissed, and it declines to exercise supplemental jurisdiction over his state law claims.  As a result, allowing plaintiff to further amend his state law claims in this federal lawsuit would be futile.

The Court therefore declines to grant plaintiff leave to file a second amended complaint.

Finally, plaintiff also requests leave to file a late notice of claim, because RCC has asserted lack of a notice of claim as a defense to plaintiff's state law claims.  Because the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, that request is denied.

---

[6] The proposed second amended complaint contains a "Second Federal Claim for Relief—Violation of Due Process Clause" brought under the Fourteenth Amendment.  This cause of action alleges that "RCC's acts and omissions deprived Plaintiff of liberty, including the liberty of free expression and academic freedom, in violation of the due process clause of the U.S. Constitution's 14th Amendment." (Diederich Dec'l Ex. 7 at p. 21).  The Court understands this to be an extension of plaintiff's First Amendment claim, brought under the Fourteenth Amendment because he sues a state institution.  See Cantwell v. Connecticut, 310 U.S. 296, 303 (1940).  Because it relates to the same conduct and cause of action previously alleged as a violation of the First Amendment, it is not a newly added separate federal claim.

## CONCLUSION

RCC's motion to dismiss is GRANTED.

The Faculty Association defendants' motion to dismiss is DENIED AS MOOT.

Plaintiffs' motion for leave to file a second amended complaint is DENIED, and his application for leave to file a late notice of claim is also DENIED.

The Clerk is instructed to terminate the motions (Docs. ##34, 39, 49), and close this case.

Dated: March 15, 2016
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge